■ In the Matter of IYANAH D. and Another, Children Alleged
to be Neglected. DANIEL D., Appellant; ADMINISTRATION FOR
CHILDREN'S SERVICES, Respondent, et al, Respondent. [885 NYS2d
79]—

Order, Family Court, New York County (Jody Adams, J.),
entered on or about January 14, 2008, which, after a fact-finding
hearing, determined that respondent had neglected his daugh-
ter Iyanah and derivatively neglected his daughter Ariella,
unanimously reversed, on the law, without costs, and the
charges of neglect dismissed.

Family Court's finding of neglect was based solely on the
condition, observed on one particular day, of the apartment
where respondent father and Iyanah resided. The court adopted
petitioner's allegation that the subject apartment's living room
was cluttered with plastic bags containing clothes and home ap-
pliances, there were unwashed dishes in the kitchen, and an
odor was emanating from dirty cat litter, and concluded by a
preponderance of the evidence that this constituted neglect.
Specifically, the court determined, without analysis, that these
seemingly unsanitary conditions of the home posed an imminent
danger to Iyanah. We recognize that although there may have
been a lengthy history with respondent's family and the court,
based on the sparse record before us, the unsanitary condition
of the apartment, standing alone, was insufficient as a matter of
law to find neglect. While the condition of the apartment was
hardly ideal, it did not place the child's physical, mental or
emotional state in imminent danger of impairment (*Matter of
Devin N.*, 62 AD3d 631 [2009]). There was no evidence that the
then month-old Iyanah was endangered by the condition of the
apartment; petitioner conceded it did not inspect the room in

which respondent claimed she slept,* and the child was not removed until more than two weeks after the single observation by the caseworker of respondent's apartment.

Petitioner first observed the premises on October 6, 2005 but did not remove Iyanah from the home until October 24. It was *error to find neglect and imminent danger to the well-being of the child based on this single visit.* The record is devoid of any indication that petitioner made any attempt, after its first visit, to see whether the conditions were improving or to confirm respondent's explanation for the condition, namely, that the plastic bags in the living room had been packed in preparation for a move to new living quarters. In fact, the caseworker testified that when she returned to the premises to remove Iyanah, she did not observe the condition of the apartment. Apart from the fact that the derivative neglect petition as to Ariella was filed nearly a year after Iyanah was removed, inasmuch as the finding of neglect as to Iyanah was error, the derivative neglect of Ariella was also in error.

Finally, we reject petitioner's argument that because the Family Court entered a dispositional order after its order of fact-finding, respondent was required to perfect his appeal from that later order, rather than from the fact-finding determination. This Court has the discretion "to treat the appeal as taken from th[e appropriate] order" (*Matter of Dakota K.*, 267 AD2d 1054 [1999]; *see also* CPLR 5520 [c]). Concur—Andrias, J.P., Sweeny, McGuire, Acosta and Richter, JJ.

---

* Respondent testified that he never brought Iyanah into the living room, but that he cleaned the room where she stayed in daily.